### ANDREW AVEY v. THE A. T. & S. F. RAILROAD CO.

RAILROAD FARE; *Pleading.* In an action against a railroad company for an illegal expulsion from its train, an allegation in the petition that the price of the ticket was seventy cents, and that the plaintiff, in the train, when a ticket or fare was demanded by the conductor, tendered this amount, which was refused, and that the conductor, for the purpose of robbing and oppressing him, demanded one dollar and five cents, and upon his failure to pay it compelled him to leave the train, makes out *prima facie* a good cause of action; and it will not, on demurrer, be presumed that the company had made a distinction between ticket-fare and train-fare, and that the one dollar and five cents was train-fare, as fixed by the company.

#### *Error from Shawnee District Court.*

ACTION brought by *Avey*. The petition filed in the court below stated that the plaintiff desired to ride on the railroad of defendant from Wakarusa to Topeka, and applied to the agent for a ticket; that through the fault and negligence of defendant it had failed to supply such agent with tickets, and at the time of such application the agent was not provided with them; that thereupon the plaintiff went upon the cars of defendant and tendered the agent of defendant in charge of the train the price of such passage, and that such agent for the purpose of defrauding plaintiff, and robbing him of his money, demanded $1.05, being 35 cents more than the price of such passage, and upon plaintiff's refusal to pay the same he was put off the cars by defendant's agent. To this petition the railroad company demurred. The district court, at the June Term 1872, sustained the demurrer, and the plaintiff brings the case here on error.

*C. M. Foster*, and *J. G. Waters*, for plaintiff:

The court below erred in sustaining the demurrer. The law without a single exception sustains the plaintiff. The case of *DeLaurens v. St. Paul & Pacific Rld. Co.*, 15 Minn., 49, is as nearly similar as it were possible for cases to be. The only cases bearing upon the facts presented in the petition of plaintiff are, *C. B. & Q. Rld. Co. v. Parks*, 18 Ill., 464; *St. L., A. & C. Rld. Co. v. Dalby*, 19 Ill., 353; *St. L., A. & T. H. Rld. Co. v. South*, 43 Ill., 176; *Jeffersonville Rld. Co. v. Rogers*, 28 Ind., 1; *Crocker v. N. L., W. & P. Rld. Co.*, 24 Conn., 249; *Nellis v. N. Y. C. Rld. Co.*, 30 N. Y., 505; and see Redfield on Railways, 4th ed., 104, 105.

*J. Safford*, for defendant in error:

1. The decision of the court below was correct. *No cause of action* is disclosed by the statements of the petition. The railroad company had a right to make and enforce a regulation requiring passengers who should not purchase tickets before entering the cars to pay a higher fare than those who should purchase their tickets at the offices of the company; and a passenger not purchasing his ticket before entering the cars may be required to pay the higher rate of fare, and on his refusal may be expelled from them by force with no unnecessary violence: Pierce on Rlys., 253, 492; 53 Maine, 279; 1 Redfield, 104. And this is the right of such company, notwithstanding the ticket-office was closed, so that the passenger could not purchase a ticket, which he sought to obtain at the office, at a reasonable time before the train started: 24 Conn., 249; 33 N. H., 343. Perhaps there are cases seeming to be to the contrary, but it will be remarked on examination that most, if not all of them, are made to rest upon *some other fact or circumstance* than the closing of the ticket-office, or a failure on the part of the company to have tickets on sale. The doctrine held in the case in 24 Conn., *supra*, is the true and better doctrine, as applicable to cases of this sort, and especially when it is considered that the

*train-fare* is the *regular fare* established by rule, and so held out to the public, while that paid at the office is a reduced fare, which may or may not be taken advantage of. If the passenger pays the train-fare, he gets the *worth* or *value* of his money in full, while in the case of the getting of a reduced rate of fare the most that can be said of it is that he gets the like privileges and service to himself at a price *less* than they are really worth. It may be said in this connection, that while the providing for the reduced rate of fare *may* inure to the benefit of the passenger, it is not so provided for *that purpose*, but for the better convenience and accommodation of the company, and for that object alone. Such being the case, we submit that it would be unjust and oppressive to hold that the passenger could have such a *vested* or *positive* right in a mere rule or regulation of the company as to give him a right of action upon his failing, for *any reason*, to be availed of any advantage to himself which might arise from it.

The plaintiff in his oral argument claimed that no rule of the company, as to discrimination between fares paid *on the train*, and *at the offices of the company*, could be considered, inasmuch as it is nowhere mentioned in the pleadings. But we insist that this position is incorrect, and for the reason that the inevitable conclusion to be drawn from the statements of the petition, as to the non-purchase of a ticket, the rate offered, and that demanded for plaintiff's passage, necessarily involves such a discrimination. And this view is strengthened by the presumptions which always exist in favor of the proper conduct of the officers of the company, and of the company itself, while pursuing its lawful business of operating its road. But independent of any questions of this kind, we submit that the plaintiff makes no case against the railroad company in his petition. He is shown to have entered upon the cars of the railroad company without a ticket, and without any evidence of his having attempted to procure one. Being so found by the conductor, he is requested to pay his fare, as other passengers are required to do, and as it is the right of the railroad company to demand; no more and no less is

asked of him; but he sees fit to refuse to accede to the demand of the conductor, and as a result he is required to leave the train, which he does without any violence or force being used, or requisite to induce him so to do. It is not shown or alleged that the plaintiff offered the conductor any excuse at all for his entrance upon the cars without a ticket, or for his refusal to pay fare as demanded. It is true that it is alleged that he tendered a sum of money for such fare, which was refused, and, as may be easily inferred, on the ground that it was an insufficient sum for such purpose. But it is not shown or averred that the conductor had any *right* or *authority* to receive *such sum* and *permit* him to ride on the train therefor. The plaintiff then is left in just the same position, as to his right to remain on the train, as he would have been had he neglected to tender any sum whatever, or utterly refused to pay any sum at all, and a passenger refusing to pay fare may always be put off the train. (See *C. R. I. & P. Rld. v. Herring*, 57 Ill.) It is to be observed in this connection, that while a conductor is in a sense the representative of the company, and may exercise all necessary powers on his train, he is yet required to act in view of the rules of such company. Rates of fare, to be varied by circumstances, are established by rules, and he must collect such fare, and *full fare* as required by such rules, or he renders himself liable to censure, and it may be, dismissal from service.

But the plaintiff did not, so far as we can learn from the petition, and as he should have done, (see 19 Ill., 353,) inform the conductor of his attempt or application to purchase a ticket at any station, and the reason of his failure so to do, or give other excuse, as before stated, for his conduct in refusing to pay the fare asked, but he chose rather to take the alternative consequent upon his not paying, viz., to leave the train. We insist that in such a case the conductor of the train did nothing more than was lawful and right, and required of him under the circumstances, and hence that plaintiff has no ground of complaint, either against him or his employer. But in another view we reach the same conclu-

sion: All that was said or done in the premises by the officers of the company, to-wit, a demand of train-fare, and on the refusal to pay it the stopping of the train and the order to leave it, the plaintiff brought upon himself, and of his own deliberate choice. We submit, then, that even if by any possible stretch, the plaintiff could be said to have been damaged, which we deny, he can have no claim upon the railroad company by reason thereof. The fact of his *voluntarily* placing himself in a position in which it was inevitable that he should receive the treatment he did, ought and must settle the case against him. We insist that there is nothing in the whole case upon which an action can rest for a moment, or for which the plaintiff can or ought to recover a single farthing. Indeed, the whole matter of the complaint as it appears in the petition seems ridiculous and frivolous enough. We have no such statute in this state giving damages in such cases, and the rule in the absence of statutory provisions is, that "no damage can be recovered for putting a defaulting passenger off at an inconvenient point, unless by some provision of statute." See 19 Mich., 305, where it is also said that a "carrier is not bound to put out a trespasser at one place rather than another."

2. The petition avers, in substance, that the price of the ticket which plaintiff desired to obtain was fixed at 70 cents, when bought at the company's office. He then avers that the *fare* demanded on the train was $1.05. It will be observed, however, that *no facts* are stated going in the least to show that the latter rate was an exorbitant or improper one, even if the statement were strictly true, which is not the case, the extra fare being really only ten cents. Hence, for all that appears, the last-named sum was a reasonable and proper rate of passage between the points named, and the plaintiff's refusal to pay it was reason enough for his being ordered to leave the train. It is also to be remarked that for all that appears the rate of fare asked was in accordance with established rules of the company, which it had a right to make. It was then authorized, and if so, the conductor could not do

otherwise than as he did.   The petition should have nega-tived the existence of the rule of the company in such cases, and denied its reasonableness and the reasonableness of the rate of fare.   But we further claim, upon this matter of the two rates of fare, that the plaintiff destroys the effect of his statement as to the rate being fixed at 70 cents, and shows that he speaks without warrant, by declaring in the next breath that the conductor — an officer known to be conversant with the facts and to be authorized to act and speak for the company—informed him that the rate of fare was a different sum, and demanded such different sum as and for his fare. This of itself shows that the rate of fare was not fixed at 70 cents, but rather at the sum demanded by the conductor.   The declaration as to the sum asked being so asked for the pur-pose of robbery, oppression, etc., cannot change this result. Then again it is to be borne in mind, in this connection, that the price of a ticket which entitles to certain privileges need not necessarily be the same in amount as would purchase like privileges, no ticket being used.   *Ticket-fare* is one thing, while *train-fare* may be quite another; and it is nowhere alleged that more than train-fare was demanded.

Again, the petition does not sufficiently allege that the company had an office for the sale of tickets at Wakarusa station, or that it was a regular station at all.   From the attempted showing that there were no tickets to be had there at the time, the natural presumption would be that it was not a regular station, at which tickets were ever intended to be sold.   To say that an agent was at the place stated, whose business, among other things, was to sell tickets, and without stating where, does not allege that there was an established ticket-office at that point.   This allegation might have been true, and yet the *only agent* at Wakarusa at the time might have been one whose business was to sell tickets at *some other* point along the line.

Again, there is an attempt to charge it as *negligence* on the part of the company that no tickets were to be had at said Wakarusa at the time stated; but we submit that the petition

contains no proper or sufficient averments for this purpose. Even if it were shown that the point named was a regular station for the sale of tickets it might well occur that the agent there would be found without them, and yet no fault or negligence be imputed to the company or its employes on that account. The petition should have set out the facts constituting the fault and negligence: 16 B. Mon., 584; 3 Selden, 493. The petition should also have alleged that the plaintiff was not in fault, and it does nothing of the kind or even approaching it: 7 Kas., 308.

The opinion of the court was delivered by

BREWER, J.: Plaintiff brought his action in the district court to recover damages on account of having been unjustly expelled from the railroad train of defendant. A demurrer to his petition was sustained, and the question presented for our consideration is this ruling on the demurrer. The petition alleges in substance that plaintiff went to the station to purchase a ticket; that the agent had no tickets; that the price of a ticket was seventy cents; that he entered the train, and, when called upon by the conductor, tendered him seventy cents, which was refused, and one dollar and five cents demanded; and upon his failure to pay this he was compelled by the conductor to leave the train. Upon these facts was the demurrer properly sustained? We think not. The learned counsel for defendant in error has discussed at great length in his brief the right of a railroad company to make a distinction between train-fare and ticket-fare; to charge more for passage when paid on the train than when paid at a station. This is no new question in railroad law, and has been before the courts of several states for consideration and decision. (See the cases cited in the briefs of counsel.) But we think this question not fairly in this case as it now stands before us. There is no intimation in the petition that any such distinction had been attempted by the company. The allegation is, that the price of a ticket was seventy cents, and that the conductor for the purpose of robbing and oppressing

plaintiff demanded one dollar and five cents.    The plain in-
ference from this is, that the only rate of passage fixed by the
company was seventy cents, and  that the conductor availing
himself of the position in which the defendant had placed
him was attempting to plunder plaintiff of fifty per cent.
extra.    The plaintiff tendering the regular fare was entitled
to ride, and can recover damages for expulsion.    We cannot
assume that the company had  established a different rate of
passage when paid on  the train, and that the conductor re-
moved plaintiff for not complying with that rule, any more
than we can assume that plaintiff was behaving indecently
and violently and was removed for that cause.    If such facts
exist they must be set up by answer.    The judgment of the
district court is reversed.

All the Justices concurring.